Thank you, Judge Diaz, Judge Niemeyer, Judge Maddox. May it please the Court, my name is Joseph Ward. I'm counsel for the appellants here, Anne Barclay deWet and Lawrence Smith, the personal representatives of the estate of their late mother, Anne Tierney Smith. Your Honors, the District Court erred when it ruled that Mr. Rollson was entitled to qualified immunity because the constitutional right he was found to have violated by the District Court was not clearly established at the time. Now, to be clear, the District Court correctly found that Mr. Rollson had a constitutional duty under this Court's precedent in Plemons v. Gail to cause local tax records to be searched when... Well, there's one sentence in that opinion, we said that, but then subsequent there's a sentence in Jones v. Flowers, which is a Supreme Court case where the Court explicitly said that search is not required for due process. They said in that case, regular mail, post on the front door, or mail to the occupant, and they said a search of the records is not required to satisfy due process. Now, that came after Plemons. Now, you have a state official looking at this, and he went pretty far. He did a lot of things. He mailed things out. He notified them and so forth, even going along with service of process where they posted it on the door, but he did not cause, require a search of the records. If he's reading Plemons, our first case, there is the sentence you have that you refer to, but if then you read Jones v. Flowers, which came after that, and it's a Supreme Court case, addressed the identical issue, he would see he wouldn't have to do that. So the question is, is that clearly established so that he would, there'd be no doubt he couldn't make a mistake in a gray area? Judge Neumeier, respectfully, Jones v. Flowers also says that you must look at the conditions of the circumstances to determine whether or not there's a reasonableness. Sure, but they explicitly addressed the search of records, of public records, and they said due process does not require a search. What they did say, and they cited Plemons for the authority that the government will require, excuse me, that when notices are returned undelivered, reasonable diligence, the government may be required, or should, excuse me, cause local records to be searched, and they cited that case approvingly in its analysis in Jones v. Flowers. They cited, we quoted it because, and they cited a list of cases where, in their introduction about the general principle, but when they came to talk about what the requirements of due process are, which is a question for the state, I call them an auditory, it's in the auditor's office, I guess, but auditor's an easy word. Deputy commissioner, yes, Your Honor. Deputy auditor, whatever. When the auditor's sitting there looking at what his due process requirement is, I suggest it takes more than a lawyer. We can look at Jones, but that's sort of the governing authority, isn't it? Well, Jones is United States Supreme Court precedent, as you probably point out, and it states that the unique information of the intended recipient must be looked at, and in this situation, as in other cases that came after Jones v. Flowers, including this Court's decision in O'Neill v. Rolson, in which Mr. Rolson was a party defendant, made clear that when the notices come back undelivered, those additional steps such as posting notice that Judge DeMario, you note, or attempting personal service at addresses that they have likely reason to believe are no good anyway, that under the circumstances is not adequate notice, and that it's not reasonable diligence consistent with the long line of cases stretching all the way back from Mullane through Mennonite all the way through Plemons and then Jones v. Flowers. And the Court in its analysis specifically found, when it recognized the existence of this duty for Mr. Rolson to check the local records, it specifically found and relied upon exclusively Plemons. How do you handle this question? This is the Supreme Court. Jones believes that the Commissioner should have searched for his new address in the Little Rock phone book and in other government records such as income tax rolls. We do not believe the government was required to go this far. And then it gave the list of what it did require, and it said you required regular mail, post on the front door, and a mail to occupant. Well, Judge DeMario, that is because in Jones, the Arkansas statute in question, it already required that the local tax records be searched before the notices go out. What the records they were referring to in Jones were the phone book, correct, and also other income tax records, but not the property tax records that were on file with the county in Arkansas. And that's the records that the district court... We're talking about what is required, and we can debate it, but the fact that we have to debate this is indicative of the difficulty that a layperson would have to figure out beyond a doubt. He has to be free from doubt. Qualified immunity means that there's no doubt about it, that a reasonable person in his position would clearly know what is required. Well, respectfully, Judge, if there's one government official that should have known what due process required in this case, it was Mr. Rolson, because he was instructed by this very court in O'Neill v. Rolson that affirmed Judge Berger's decision in the Southern District of West Virginia in a lower court case entitled O'Neill v. Wiesen on precisely what due process required and what reasonable diligence was. She stated in that case, it was just like this case, where notices were sent out, they were returned undelivered, and then Mr. Rolson did nothing. He took no actions. In that case, Judge Berger stated it's as if he was acting, he was proceeding as if the established law did not even exist. So that's fair enough. So then it seems like he ramped it up from zero to 100 and required personal service as the next option, sort of the Cadillac of options. And you say that under the circumstances that was just unreasonable given what he knew about the mail having been undeliverable. The question is, so what does that mean, mail being undeliverable? Does that mean that someone was not there at the moment of delivery or that the addresses were not good? Because it could mean all manner of things, and it doesn't necessarily mean that personal service would not have been effective in this circumstance. Your Honor, that Cadillac you describe in this case, it was a lemon because what it meant was that when the notices come back, they're undelivered. In this case, some were unclaimed because they were sent to a post office box. Some were undeliverable because there was a wrong address. And they came back, and they were noted to be undelivered. What Mr. Rolson did, employing what he understood O'Neill versus Rolson to tell him to do, was to attempt personal service, and then if personal service failed, which it did in all four instances in this case on the four different addresses that were provided, to post it on the property. But as Judge Keeley noted in Northern District of West Virginia case, Kelber, he did not address the undeliverability issue. It was exceedingly likely that those addresses were no good and that he should have known that. Posting on the door catches the person who may have not gotten the mail for many reasons, but when the person comes there or the person's caretaker comes there or the person's daughter goes there, we'll see it. I mean, it doesn't have to be perfect. This idea is it has to be a reasonable effort. It doesn't have to succeed, and the Supreme Court made that clear. It doesn't have to succeed. Well, again, Your Honor, the direction of attempted personal service and then a posting at an address that the sender knows has a very good chance of not being an accurate address, that doesn't live up to Moline's... Well, there's no evidence of that in this case. The notices all came back undelivered. There's no evidence that they went and posted on the wrong door. Well, actually, so there's four notices, Your Honor. Two in Washington. Two in Washington and one in Kentucky and one at the subject property. The one in Kentucky, the person turned them away and said, Mrs. Smith doesn't live here any longer. And the ones in D.C., they were posted, but one was her former address that she hadn't lived at for years. The other was her former lawyer's office, and they posted it in the middle of the afternoon on a Wednesday, supposedly, and it was never provided to her, so she didn't have actual notice. And we're not asking for perfect service because it's the circumstances that matter. And when you don't address the undeliverability issue, what you have is a situation where these notices are just going right back out to the same address. With just a simple check of the records, the tax records, which Mr. Rolston very easily could have done, in which he was advised to do by Judge Berger in O'Neill v. Wisen, which then again this Court affirmed, was to also check the local tax records to address that undeliverability issue because in the language of Mullane, that notice, it's not one that's designed to, it's not one desirous of someone to inform, and as a result it ends up being a mere gesture. Can you tell me how you would define the established right, in this case, that Mr. Rolston violated? The District Court defined it, Your Honor, as the right to have Mr. Rolston cause, or excuse me, to cause Mr. Boer to check the local tax records again. We think that's too narrow, and it should be to cause the local records to be checked again. That's important because there is a database that Mr. Rolston has access to, as the Auditor's Office does, that's shared with all 55 West Virginia County Assessors. For the matter of keystrokes, he could have discovered himself much easier than asking Mr. Rolston to certify that the tax records had been searched. That seems to be a right that's unique to the circumstances of his case, as opposed to something a little broader that might guide officials going forward. Well, Your Honor, Plemons, and then of course the O'Neill case, the wealth of cases relied upon Plemons where County Assessors were receiving notices back, and if they were sending them back to addresses, the same addresses that they noted that needed to be wronged, that requirement to just check the local records would alleviate in large part the potential that they just simply go back to the same location. Is there any significance to the difference between the District Court's articulation of the right and putting the responsibility for checking the records on the purchaser rather than on the Deputy Commissioner versus putting it on the Deputy Commissioner? In other words, is there any practical consideration here as to why the responsibility should lie with one party versus the other? First, frankly, Your Honor, I think the District Court erred and there's an assumption in its decision where it says that Mr. Rolston should have caused the tax purchaser to check the local records anew. There's no record evidence to suggest that he ever checked it. Checked it in the first place. He never checked. Yeah, there's no record evidence of that. And it's important to note here, Your Honors, Mr. Rolston in his briefs makes a point when they try to show that they complied with the statute. They point to the fact that a title exam was done by an attorney for Mr. Vore, the tax purchaser, and it lists in part what he looked at. Now, the tax records aren't listed on that title exam certification, but what's also critically important is that the title exam certification that ultimately found its way to Mr. Rolston before the tax deed was issued pointed out that the search, the title exam search, was conducted prior to January 15, 2018. Now, this was just two months after the tax lien had been issued. In a full nine months before Mr. Rolston would be even required to send out the notices to redeem. So at that point, when he issued that tax deed, Mr. Rolston knew that when he received the initial addresses, they were stale. They were nine months, at least nine months stale. They were returned undelivered. So he knew there was a very good chance that this was not the right address. Then he attempted personal service. That failed, and they were posted. So at the final analysis, there was no indication that he ever actually made service on my client, Mrs. Smith. Is there any precedent for the deputy commissioner to check the tax records that you said should have been checked in this case? In other words, do you know whether or not it's been done in prior cases when you have difficulty locating the owner? Excuse me, Judge. Are you asking if there's cases where that has happened? Yes, where the deputy commissioner has checked the records to determine the current address of the owner. Well, I mean, that was the instruction of this court in Plemons, and that was the instruction of the district court in Kelber and the district court in O'Neill that this court affirmed. But you don't know whether or not it's, I guess, a common practice.  Well, fortunately, it was not a common practice in West Virginia when Mr. Rolson has been in that position for quite some time. But clearly, he was, by virtue of being served a copy of the O'Neill v. Wysen decision and then this court's opinion affirming O'Neill v. Wysen, he was on notice that additional steps under Plemons, under Jones, were required to apprise my client, Mrs. Smith, that there was a pending deprivation. And was he on notice that the only reasonable step was the review or investigation of the records? Judge Berger identified two steps. One was posting, but she also said check the local records, which makes sense because, as noted in Kelber, if you check the local records and you see that there's another address, you may not need to do personal service, which is much more expensive, and then posting, because there was a fee associated with that as well. And I believe Judge Keeley in Kelber makes that point, that you cut off the need for these additional steps by doing that first step, which, again, was indicated in this court's binding precedent in Plemons that he should have undertaken. Mr. Rolson, I mean, also takes the position that, you know, it wouldn't have been his responsibility to make sure that the tax deeds were properly served, but it's the tax purchasers. And, again, in Jones v. Flowers, the Supreme Court recognized that it's the duty of the government official to take additional steps when reasonable notice is not, it becomes apparent that reasonable notice has not been satisfied. And, again, in our briefs, we point out, Judge Niemeyer, that the statute, the Arkansas statute, specifically required in the first instance that there be a review of the records. So that was not an issue. The Supreme Court said the statute went beyond the requirements of due process right after that. That's correct, Your Honor. Again, Jones also said... We're talking about a due process violation here, right? Yes. Section 1983, so you have to identify, first thing, as a constitutional right that was clearly known to this officer. And I'm not sure what the constitutional right that was clearly known to the officer, especially in light of Flowers. Flowers said you have to take reasonable steps, and it said doing certified mail is not sufficient. But then it says follow-up steps would be sufficient, and then it said conducting a search is not necessary. Respectfully, Your Honor. And then it says the statute that required a search or provided a search went beyond due process. Respectfully, Your Honor, the district court found, and this has not been challenged here, it's not before the court whether or not there was a constitutional duty, but rather just whether or not it was clearly established. What's the issue here? I thought, what is the basis for the suit? I mean, is this a 1983 action? Yes, it is a 1983 action, correct. And it's based on what, due process? Yes, Your Honor. Okay. So we basically have a constitutional issue whether there was a clear right imposed by the due process clause on this man to direct the purchaser in a tax lien to go search the records. Yes, Your Honor. And we contend that authority was set forth in the plan. Okay. I just wanted to understand the structure. Sure. Thank you, Your Honor. If there's no further questions, I'll turn it over to my friend. Thank you, Mr. Ward. Mr. Cook. Thank you, Your Honor. Judge Diaz, Judge Maddox, Judge Niemeyer. Thanks for having me here today. My name is David Cook. I represent Russell Rawlinson, the Deputy Commissioner of Delinquent and Non-Entered Lands in West Virginia. I'm not going to go through the statutory construct. I think that's an important fact in this case because the statute is very specific as to the duties for the state and the duties for the lien purchaser as to what is required. Some of the things that counsel said specifically related to Kelber and Plemons, there's a reasonable diligence standard that this court outlined in Plemons, and that applies to the purchaser. When O'Neill v. Wisen came out, at least when the decision came out, and I called O'Neill v. Wisen because that's where the Deputy Commissioner got the information from to form this construct related to additional steps necessary to apply for a tax or to provide notice to redeem. The district court was specific in citing Jones v. Flowers, and I'm familiar with the cases that are cited by counsel. For instance, Plemons is cited typically for the position that there is a reasonable diligence standard placed on the purchaser. But what O'Neill v. Wisen did is cite Jones v. Flowers, which is the Supreme Court case that says that the state has to take additional reasonable steps to attempt to provide notice to the property owner. I think that Judge Niemeyer made a good point related to what is and what isn't required. From our standpoint, it's knock on the door or post notice. That's what Jones v. Flowers said. When Judge Berger outlined examples in O'Neill v. Wisen, those were specific examples that were provided. So let me ask you about that. So you just said that's what's required, but what's required is reasonable efforts to effectuate notice, even if unsuccessful. And those efforts may vary depending on the circumstances of the case, right? So it's not one size fits all. I agree with you, Judge Diaz, yes. And actually, I probably misspoke, so thanks for clarifying for me. But an example that I would raise, for instance, as it comes to the edict that was provided by the district court in this case, that if certified mail is returned unclaimed, that the deputy commissioner shall tell the purchaser to go search county records again, is what if you have a situation, this happens often in West Virginia, where taxpayers use post office boxes to pay their taxes. That's where the tax lien information goes, I'm sorry, the tax tickets go to pay the bill. Now, we obviously try to serve this person via certified mail at the post office box. It comes back as undeliverable for whatever reason. It doesn't necessarily mean someone may not have picked it up. Like Judge Maggs said, it would mean someone may not have been home at the time. But deputy commissioner, under what the district court said, you need to go and check the county records purchaser before you can get this lien. Now, purchaser goes, checks the county records, same post office box, okay? And it hasn't changed. Send out the certified mail again to the same post office box. It's returned undeliverable. Does that stop the duty of the state auditor at that point from ensuring additional steps were taken? In other words, does the district court's edict, is that the last step before the deputy commissioner is absolved of any responsibility under due process? I've litigated this issue as it pertains to purchasers who do not like the onerous requirements that the state auditor's office puts out there, personal service, posting. They feel like this is unnecessary under clements because all that's required is reasonable diligence on their part. So where does the process end? I think that's where I'm coming from. The circumstances dictate what type of notice should be provided. In these circumstances, I think the auditor's office goes above and beyond to provide notice to these individuals. And for the most part, it works. Well, having said that one size doesn't fit all, your colleague on the other side obviously is relying very heavily on clements, right? And there's this language in clements that I'll just read to you and you give me your interpretation of whether or not it suggests, as he does, that this is what was required, not just in this case, but in every case when mail has been returned as undeliverable. The sentence is, but as the district court initially remarked, and as most cases addressing this situation recognize, it is at the very least reasonable to require examination or reexamination of all available public records when initial mailings have been promptly returned as undeliverable. So mail returned as undeliverable. The court seems to be suggesting the next step, and correct me if I'm wrong, is to search the public records. That didn't happen here. That's a constitutional violation. What's wrong with that? Again, this kind of goes back to my hypothetical related to the post office boxes. What we've got here is a judge issuing a standard that the state has to follow. No, no, it's not the judge. That's our court. Plemons. This is Plemons. Okay, we're talking about Plemons. Okay, well, in that circumstance, in that circumstance, I believe that this court remanded the case back to the district court, and I'm trying to remember the decision in Plemons, to establish some factual development to see whether or not the purchaser took an additional step to check the county records. I don't believe there was any ruling in that case that said that the state had to direct the purchaser to go and check those county records. What happened in that case was for due diligence purposes, which is how I read Plemons, which is how I read Kelber, that under that due diligence standard, a purchaser has to do more. I actually put this down in my notes. The way that I read Plemons, you cannot remain confined to the dusty corners of the record room. Frankly, when I read through that case and they build on each other, Plemons, at least this court, relied on New Lane, and I hope I said that right, and it kind of is building blocks related to what does reasonable diligence mean as it pertains to a purchaser providing notice to an individual that may have an interest on property that's going to be sold. So that test to you may be different than what your client is required to do. The purchaser may be required to do something more extensive than what your client, the state official, is required to do. I can say in circumstances, Judge Diaz, that, for instance, in West Virginia, we have lots of vacant lots, and sometimes you'll get a post of a notice to redeem on a telephone pole, and what happens is you have the person that is going out to serve the notice, to personally serve the notice, put in there that this is a telephone pole. This is not an address, and when that happens, it isn't turned over. This individual case, it may be a circumstance where the purchaser should have been something additional to try to find additional addresses, but under our law, and I appreciate that counsel thinks that we're trying to deflect and say that we have no duty. That's not the case. Had that been the case, we would have never changed the policies and procedures after O'Neill v. Wisen was decided. But, again, the process that the auditor's office does is a process to take those extra steps that are set forth in Jones v. Flowers and O'Neill v. Wisen. Clemens didn't address the commissioner's or the auditor's duty. He just addressed the purchaser's duty. I'm sorry. Jones, Your Honor? No. Jones. Exactly, Your Honor. Yes. We didn't say what the auditor had to do, did we? No, sir. I would like to say that the statutory construct provides a method for persons that feel that they didn't receive proper notice to file a lawsuit against the purchaser. There's a clear-cut standard in the statute, and typically that's what happened. For instance, in the Kelber case, that's what happened. They sued the purchaser. The state auditor was not a party to that lawsuit, and they determined whether or not there was a violation of the statute because the purchaser failed to provide the appropriate notice. At no point in Kelber is there a direction that the state has to tell a purchaser to go and search additional records. I've got 10 minutes left. Is there any practical difficulty to the Deputy Commissioner checking those records himself or herself? That's not a question that I've asked the Deputy Commissioner. What I will tell you, Judge Maddox, is that we have thousands upon thousands of tax lien sales that happened in West Virginia. We have 55 counties. They happen individually. You have an auction in each different county that's run by the Deputy Commissioner, and you have voluminous notices going out for different properties and coming back. There's a constitutional duty that applies in each one of those cases, correct? There is. I would agree with that, Judge Maddox. And that constitutional duty on the Deputy Commissioner is to take reasonable steps when we encounter an issue of locating the owner, correct? To take additional reasonable steps if a notice to redeem is returned unclaimed when it was sent certified. Is there some reason to expect that a Deputy Commissioner would not expect that a reasonable step may include checking publicly accessible tax records to determine the current address for a known? You're saying, Judge, that this is a step that the Deputy Commissioner would have to take himself or someone in his staff or directing the purchaser to do that action? Because our statute is very clear as to the responsibilities of the parties. Okay, now that's a different issue. Are you saying that the statute defines what due process is required on the part of the Deputy Commissioner? I would not say that, Your Honor. That's a fair statement. I would not say that. Okay. Well, I'm not focused as much on who does it. I guess Plemons could be read to impose a duty that it be done by someone, and I guess the buck stops at the Deputy Commissioner because they're the ones responsible for issuing the tax deed. That's a good point. I thought the buck stopped with the purchaser. The purchaser, if the purchaser fails on the notice standard, the purchaser doesn't get the property. It will be taken back. Yes, Judge DeMartis. All the risk of loss is on the purchaser. The Deputy Commissioner has a functional duty described by statute. It's a strict liability. I'm not sure that, well, I know Plemons did not impose any additional duty on the Commissioner. It's a strict liability statute that the purchaser has to adhere to, and the duties of the . . . It's a conditional purchase. He gets the purchase, and if he hasn't exercised due process and assured that it was done, he's going to lose the property. And in this case, the purchaser settled it and returned the property. That's exactly right, Judge. And the duties of the Deputy Commissioner in the Office of the Ministerial as set forth in the statute, when you read the statute, and I tried to cite it the best I could in the briefs, shall. The Deputy Commissioner shall issue the deed on X amount of days once he receives the application. The Deputy Commissioner shall send the notices to the addresses that were provided by the purchaser. And all these requirements are set forth, the time frames, and yes. Our argument has been that it's the purchaser that has the duty to comply with the statutory construct. And that was the argument that was raised, not by me, but by prior counsel in front of Judge Berger in O'Neill v. Wisom. And ultimately, she raised Jones v. Flower to attach some additional reasonable steps. And when you read the decision, and this is what they applied, knock on the door or post notice, which is what the State Auditor's Office does. I've got seven minutes left. You don't need to use it. I don't need to use it? In fact, I would encourage you not to use it. Well, thank you very much for having me here today. It's been a distinct honor. Thank you, Mr. Cook. Mr. Ward. Thank you, Your Honor. The issuance of a tax deed is a State action, a due process violation. It's the State, the government, that is required to afford due process, not the tax purchaser. Plemons made that clear, I believe, in footnote three. In O'Neill v. Wilson and in O'Neill v. Wisom, the Court again made clear, it's a State action. That's why the State is held accountable. They're the ones who are required in the Constitution to provide due process. With regard to Mr. Cook's statement about PO boxes, in West Virginia there's a lot of PO boxes. That is true. Had Mr. Wilson checked the local records, he would have found my client's PO box in Kentucky. He would have sent that address, he would have sent the notice, and she would have received it. The District Court found that to be the case. They had to find that to be the case because she had an adjoining lot that went delinquent. Subsequently, Mr. Bohr again purchased that property or that lien. This time, he must have checked the local tax records because he sent a notice to her at that PO box, or he had Mr. Wilson do so. She redeemed that property. The PO box was relevant. There's no question that had they checked the local records, she would have received the notice. With regard to, again, that State action issue, Flowers makes clear it's a State action. The only reason Flowers and the only reason Kelber didn't include a statement, that the government, that the public official was responsible for causing the records to be checked, is merely because they weren't parties to that case. They had not been sued. But in Jones v. Flowers, again, the U.S. Supreme Court is recognizing Plemons as a case imposing an obligation where a court of appeals imposed an obligation on government officials because they recognized, again, it's a State action. Of course, what we held is that we said the statute, we did not rule on the constitutionality of the statute. We assumed it was constitutional, which imposed the duty on the deputy commissioner. That's right. But our holding was focused on the purchaser. That's correct, Your Honor. Accordingly, reasonable diligence requires advantage, that's the purchaser, to search all publicly available court records. Once prompt return, the mailings made clear that its initial examination of the title to the Echo Road property had not netted Plemons' correct address. So that's the holding of the case. That's correct, Your Honor. But as you're well aware, Owens and Booker made clear that a case does not have to be directly in point, but rather we look to broad constitutional principles and Yeah, but Jones v. Flowers does that nicely. I mean, Jones v. Flowers articulates the full scope of the due process clause in this context. It says reasonable efforts have to be given. They don't have to be, doesn't have to be, have to give actual notice, but there have to be some reasonable calculation. And they said, began with certified mail, and they said that's not enough. And they explained why. And then they said the follow-up steps were, and then they cut it off and said, but it doesn't require further that research be done. Your Honor, I see my time, I believe my time is up, but I mean, we're talking about immunity here, qualified immunity. We're not talking about an absolute ruling on what the law is. We're talking about whether there was a clearly established right imposed on the commissioner under the Constitution, under the due process clause, to direct that somebody search records. And I must say, I don't know where the commissioner would find that duty. It's not in the statute, and it was not in the practice. What it was, at best, it was a duty to remind the purchaser to do it, but there's no duty that the commissioner remind the purchaser, because Plemons said the purchaser had to do it. And the risk of loss is that the purchaser doesn't get the property. And then the risk of loss to the property owner is that they have their property stripped from them. The property owner gets it back. Respectfully, Your Honor, again, the only reason that in Plemons it didn't direct the auditor to do that is because he wasn't a party to it. It's consistent with the statutory scheme. In other words, the state is not making the determination to take. The state is accommodating a sale, a tax sale, and the state conveys title if the purchaser can carry out the duties. And so it was pretty clear in Plemons that we were saying the purchaser had not satisfied his duties, so he didn't get the title. Actually, we remanded that one. And in this case, the purchaser arguably didn't. You argue that he didn't do the necessary functions, and he settled. He gave the property back. She has the property, or her state has the property, and they settled for a monetary amount. And now you want to impose damages against a deputy commissioner who never has that duty under the statute and didn't have the duty under Plemons and doesn't have the duty under Jones v. Flowers. And yet, we're looking for a clearly established... Jones makes absolutely clear that even if the statute has been found to be reasonably calculated to deliver proper notice, to make them apprised, at the end of the day... But think who you're suing. You're suing the deputy commissioner, and the deputy commissioner has no duty to even give good title. The deputy commissioner is a functionary between the sale and the purchaser with a limited duty. Respectfully, Your Honor, when he had the additional information, his duty changed. Well, that's what I want to tell you where you can show me that. I have not found a single case to say that. Not a single case. Respectfully, we take the position that O'Neill, obviously, and Plemons make that point that when they have additional information... Well, you're collapsing people in the concept. You're collapsing the purchaser with the deputy commissioner. Deputy commissioner has an office. He's managing the transfer of these tax liens, which are tax sales, which are numerous, and the change function. And so the statute puts the burden on the purchaser if he wants the property. So he gets the property in a tax sale conditionally. If due process has been filed, he'd probably get it. If due process is not filed, he has to give it back. But that is not determined by the deputy commissioner. That's determined by the purchaser. That's what the scheme is, and that's what Plemons held. That's the scheme. When additional information, we take the position, is provided. As noted, we believe in Plemons and Jones. They have additional information. Due process requires additional steps. And that's all we've asked that the court find, that consistent with Plemons and O'Neill, that they impose additional step of him causing the tax records to be checked. Thank you, Your Honor. Thank you, Mr. Ward. Thank you, Your Honors. Thank both counsel for your arguments. We'll come down and greet you and adjourn the court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Paul V. Niemeyer, Matthew James Maddox